Good morning, and may it please the Court. My name is Rene Valladares, and I represent Mr. Hernandez. The relief that I'm asking in this case is modest. I'm merely asking that this Court remand the case for proceedings consistent with Ameline. There are three reasons to support my request. The first reason is that the Court did not follow the minimal requirement stated in Ameline to solicit the views of counsel. Did you have any sort of notice that the judge was going to make his decision whether he needed a new sentencing so that you could send him a brief and remind him of what he'd said the first time? Well, I wouldn't sentence you so harshly, but the guidelines are so requiring. There was no notice, Your Honor, no. And that's why we feel, obviously, very strongly about that first point. The second point being that also the Court did not abide by the minimal requirement set out in Ameline that the Court needed to provide some recent explanation for its decision. The third reason is that under the facts of this case, the Court should have conducted a sentencing hearing, and to fail to have done so was unreasonable. That issue is a little premature. And it may be, Your Honor. Yes, indeed. Yes. So, in other words, if the judge had followed the proper procedure, the judge could have determined that he would have imposed the same sentence. He could have, yes. And that would pretty much be it, although you could appeal that sentence then back to the Ninth Circuit and say that the resulting sentence is unreasonable. That's correct, Your Honor. That is correct. But right now, you're complaining that you didn't get a full the full benefit, the limited benefit of Ameline, and the judge just did not do what we told him or her to do. That's correct. I'm not asking for anything more than what Ameline provides for, essentially just for the views of counsel to be solicited, and a second to provide a recent explanation in the record as to why the judge went ahead and did what he was supposed to do. Do you have some reason to be hopeful that that process will be fruitful for you when you get back down in the district court? Well, I do, Your Honor. I do. And that is that in the first time around when I had my — when my client had his sentence, I was totally hamstrung by the then-mandatory guideline system. And a series of reasons that I could bring now, for instance, drug abuse, duress due to drug abuse or diminished capacity due to drug abuse, youthful lack of guidance, impoverished socioeconomic status, all those reasons are reasons that I was only able to support my sentencing entrapment argument. Now, post-Booker, all those are grounds that are totally independent. They're reasons that the judge can go ahead and look at to go ahead and impose a reasonable sentence. The evidence that I presented concerning those four topics that I just mentioned was very brief, again, because I only presented them for the purposes of collaterally supporting my motion for sentencing entrapment. That was my motion for downward departure for sentencing entrapment. But — but, yes, I do. First of all, in this case, we have a very high sentence of 17-1⁄2 years. There was even the minimal evidence that I was able to go ahead and present in my motion for downward departure for — for sentencing entrapment showed that this individual had an extremely rough upbringing, that he was a drug addict, et cetera. And, obviously, now I would be able to go ahead and explore each one of those reasons independently, present live witnesses, et cetera. Maybe you want to reserve some time. I do, Your Honor. Thank you. Roberts. Counsel. Good morning. My name is Andrew Duncan. I'm an assistant United States attorney in the District of Nevada, and I represent the United States in this case, the appellee. Opposing counsel, I believe, has correctly raised the issue before the Court in this case, and that is whether or not the district court properly followed the procedures established by this Court. Let me give you an opening to what's on my mind so you can address it. Sure. When the judge was sentencing under the guidelines, he complained about the guidelines. He basically said, though I can't remember his words, he basically said, I think this sentence is way too harsh, but I'm compelled to give it to you by the guidelines. I wouldn't do it if I didn't have to. Then, Booker came down, and the guidelines were just advisory. Lo and behold, the judge says, wouldn't have made any difference. I would have given you the same sentence. But he never heard from counsel. I'm thinking, maybe he just forgot what he said. Maybe he forgot the case. Maybe his calendar clerk put it in his read-without-signing pile for routine orders. It seems funny for him to say the first time, I wouldn't do this if I didn't have to. And the second time, I'm going to do this even though I don't have to. This issue was — So why shouldn't we just remand so that he can hear from the lawyers and decide what he wants to do? This issue was addressed by this Court in Ameline. And the essence of Ameline is, let's let this decision be made by the person who's in the best position to make it the trial court judge. We expected an informed decision, though. And we said how the district court was to, you know, make an informed decision. Right. And one of the things that Ameline — Just tell me page numbers and quotes. I don't go by emanations and penumbras. On page 1082 of Ameline, this Court talked about we could be left with a review of a potentially misleading record. And one of the exact examples that this Court gave is that district court judges have been known to make stray comments about the guidelines, and that a district court may choose to say some encouraging words for the benefit of the defendant's family. And it's our position that in this particular case that this is why we do remand the case, so that the district court judge can take a second look at it and make it. So maybe this statement, I wouldn't do this if I didn't have to, was kind of like, no, that doesn't make you look fat. Just sort of thing people say out of politeness. I think that's what that passage means. And it's our position that, you know, based on that and based on the Court's secondary review of the case, it's clear by his order — But how do we know if there was no chance for the lawyers to bring it to the judge's attention and for the judge to say, well, I've given it more thought and I really didn't mean that? Based on the Court's order. In this case, the Court issued an order where he specifically quotes from Ameline. This shows that he was aware of the requirements, the procedural requirements established in Ameline. I know he's aware of Ameline. I just don't know if he remembered this case when he was signing the order. When you say this case, are you talking about his specific quote? I'm thinking maybe the judge had studied Ameline and carefully prepared an order that dealt with the law. But didn't remember that he'd said to Hernandez, oh, I wouldn't do this if I didn't have to. I think this is too harsh. The government, we can't stand here and know exactly what the Court was thinking. It's our position that what he did was adequate pursuant to Ameline. Well, we know what he said the first time. We do know what he said. And I think that was addressed in Ameline. It's our position that the Court knew — How do we know? Ameline says basically sometimes judges say things they don't mean just out of concern for the defendant's feelings and his family's feelings. That's what that part you quoted says. Right. In the judge's order, he talks about Booker as well. And he states that upon consideration of Booker, the Court found that the sentence would not have materially differed. Certainly, it seems that the Court understood that the guidelines were advisory and that he had to review 18 U.S.C. section 3553. Don't we have some authority somewhere that says the judge has to give the lawyers a chance to file briefs? In Ameline, it did say that the Court should give the opportunity for counsel to file either something written or something orally. But it's our position that the Court had before it all of the information it needed. The Court had before it the PSR, a very lengthy — We're going past each other on different tracks. You're saying the Court had before it. And I'm thinking when I was a district judge and had hundreds and hundreds of cases, and the chances of my remembering Hernandez, if he'd been one of my cases, would have been slight unless somebody reminded me of what I thought and said in that case. Based on the Court's order, it's fair to say that the Court had the opportunity to review the case, that the Court didn't just willy-nilly sign an order. It's fair that the Court, based on his order that he had looked at the opportunity to. We could tell the clerk, bring a file down to my chambers. Whether he did it is what I don't know. Look, the Court states that he reviewed the case and had reviewed Booker, and that based on Booker, that the sentence was reasonable in this particular case, and it would not have been materially different was what he said in his order. After the same sentence came down, was there any motion for reconsideration of any kind filed, or was there just an automatic appeal here? There was an automatic appeal here. No motion was made. No, there was no motion. Was there a call to try to make sure that the district judge understood what he had previously said? No. What occurred, the procedural background here is the case was remanded by agreement of the parties after Booker was decided. Almost two months lapsed in between the remand and the Court's ruling in October of 2005. After the Court's ruling, there was a direct appeal taken here by the appellant. The problem that I have is, you know, what happened here was we were the Court was, in his case, was faced with plain air. We didn't do the full plain air analysis, and under Ameline, you know, we laid it out how best we should decide that third step of the plain air analysis, and we sent it back to the district court, and we expected certain things from the district court, and we told the district court what to do and how to do it with an explanation, and that wasn't done here. Again, it's our position that the district court substantially followed what needed to be done in Ameline. So what bothers me, there's never been, you know, he's never had the, we've never really completed the plain air analysis that was initially at stake. It's our position that the Court did what occurred, what was supposed to happen in Ameline, is that the district court is supposed to answer the question, and that the district court did review the case and did answer that question. And when the district court did answer the question, the district court answered the question by stating that the sentence would not have been materially different if the district court had known the guidelines were advisory at the time of the sentencing. Based on that, it's our position that the district court judge's order was sufficient to follow the procedures of Ameline. Okay. Counsel, don't you think that if counsel had been there and said to the district judge, Judge, let me remind you of what you said previously about this case and read to him or made it clear to him what he had previously said, that there might very well have been a difference in the outcome of the case? Again, it's our position that... We don't know, but, I mean, judges are just human beings, and if you tell them, look, here's what you said before when you looked into this case at the time of the sentencing, we'd like to emphasize, though, what the judge did know. And the judge knew the defendant's complete background at the time of sentencing. The judge stated that he did review the case under Booker in his order. Therefore, we believe that the defendant did sufficiently follow. Well, he didn't give the kind of explanation that was contemplated by Ameline. The judge gave an explanation that he had reviewed Booker. Implicit in that is that he had reviewed the different things necessary in order for the sentence to be considered reasonable or unreasonable by his statement that he had reviewed Booker. And while he does not... We said in Ameline the district court judge should place on the record a decision not to resentence with an appropriate explanation. The only explanation we'll concede that the only explanation given by the Court is that upon consideration of Booker, he found that the sentencing of Hernandez would not have differed materially. But that's the ultimate conclusion. Well, implicit in his upon his consideration of Booker is that he had the opportunity to review the different things he needed to review after Booker in order to determine the sentence reasonable. We don't know what he had in front of him. We no one can know exactly what we had he had in front of him. Well, if he had offered an explanation, he might have put in, you know, based on the probation report, you know, the sentencing record before the court at the time, the transcript of the sentencing hearing. It's my judgment that I would not impose a materially different sentence. Again, we'll... We don't know that because he didn't give us any explanation. And we set forth a procedure for the district courts to follow in Ameline. Basically, they were — that procedure relieved a large burden on our part, because we passed on the difficult task of the substantial rights question, the prong three of the plain air stand. We passed it back to the district court. We didn't — we thought it would be easier and better to hear from the district court judge in a meaningful way, and that didn't happen here. Does the Court have any additional questions? Thank you, Counsel. Thank you. You saved a few moments, but I don't know if you want to use them or not. You can do whatever you wish. I just want to know, unless the Court has any additional questions, I will submit them after. Thank you, Counsel. Thank you very much. The United States v. Hernandez is submitted.
judges: Merritt, Kleinfeld, Paez